**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES KIESSLING, | ) |
| Plaintiff, | ) Case No.: 2:16-cv-0690-GMN-NJK |
| vs. | ) |
| | ) **ORDER** |
| DET. RADER P#6099, *et al.*, | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 53), filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Detective Reggie Rader ("Rader"), and former Lieutenant Bobby Smith ("Smith") (collectively "Defendants"). Plaintiff James Kiessling ("Plaintiff") filed a Response, (ECF No. 57), and Defendants filed a Reply, (ECF No. 58). For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

This claim arises from an incident between Plaintiff and Defendants that resulted in the issuance of a citation for Obstructing a Public Officer pursuant to Nevada Revised Statute ("NRS") § 197.190. (*See* Mot. for Summ. J. ("MSJ") 2:28–3:1, ECF No. 53); (*see also* Plaintiff's Dep. at 26, Ex. A to MSJ, ECF No. 53-1). On May 25, 2014, Plaintiff met his ex-wife Kaytlan Kiessling ("Ms. Kiessling") at a Starbucks to drop off his son during a custody exchange. (*See id*. at 17). Plaintiff drove his motorcycle to Starbucks while his friend, Bryce Ray ("Ray"), drove Plaintiff's son in his car. (*See id*. at 18). When they arrived at the Starbucks parking lot, Plaintiff and Ms. Kiessling started arguing. (*See id*.).

| 1 | At the same time, Smith was at Starbucks waiting for Rader's arrival to discuss detective
| 2 | duty assignments and operation plans. (*See* Bobby Smith Dep. at 9, Ex. D to MSJ, ECF No. 53-
| 3 | 4). A citizen came into the Starbucks and informed Smith that there were two people arguing
| 4 | in the parking lot. (*See id*.). Smith left Starbucks and walked towards Plaintiff and Ms.
| 5 | Kiessling who appeared to be the couple that was arguing. (*See id*. at 10). Smith claims that he
| 6 | began investigating a potential domestic battery claim based on information received from Ms.
| 7 | Kiessling. (*See id*. at 12). Smith spoke to Plaintiff to gather more information. (*See id*.).

Shortly thereafter, Rader arrived at the Starbucks parking lot for his meeting with Smith and saw Smith interacting with Plaintiff. (*See id*.); (*see also* Reggie Rader Dep. at 9–11, Ex. E to MSJ, ECF No. 53-5). Rader conversed with Plaintiff while Smith spoke with Ray. (*See* Bobby Smith Dep. at 15–16, Ex. D to MSJ, ECF No. 53-4). Rader gave Plaintiff verbal commands, and took ahold of Plaintiff's arm. (*See id*.).

Upon hearing the verbal commands, Smith walked back over to assist Rader and took hold of Plaintiff's other free arm. (*See id*.). Smith and Rader continued to give Plaintiff verbal commands to "stop resisting," and Plaintiff replied that he was not resisting. (*Id*. at 17). Smith attempted a "handcuffing arm lock" in order to place Plaintiff's hand behind his back. (*Id*.). Smith said to Rader "take him to the ground," and Smith pulled Plaintiff to the ground. (*Id*. at 18). Once on the ground, Smith applied the Lateral Vascular Neck Restraint ("LVNR") by using his arm to encircle Plaintiff's throat. (*See id*.). Smith used a "level two" LVNR to restrict Plaintiff's blood flow. (*Id*. at 19). While Plaintiff was on the ground, Rader placed handcuffs on Plaintiff and then Rader and Smith stood up Plaintiff. (*See id*. at 20). Ray witnessed the entire incident from the moment he arrived with Plaintiff at the Starbucks parking lot until after Plaintiff was handcuffed. (*See* Bryce Ray Interview Tr. at 4–5, Ex. K to MSJ, ECF No. 53-13). Ray captured a video of the incident that begins recording when Smith attempted the "handcuffing arm lock" on Plaintiff. (*See id*.); (*see also* Video, Ex. L to MSJ, ECF No. 53-14).

1 | Due to the LVNR, Plaintiff stated that he could not breathe and that he almost passed out. (*See id.*).  Plaintiff additionally alleges that he lost consciousness during the application of the LVNR, lost a tooth when he hit the ground, and vomited after he was brought back up onto to his feet. (*See* Resp. 3:4–6, ECF No. 57).

On March 30, 2016, Plaintiff initiated this action alleging five claims for relief: (1) a violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 due to excessive force against Rader and Smith; (2) municipality liability against LVMPD; (3) negligence against Rader and Smith; (4) negligent training, supervision, and retention against LVMPD; and (5) battery against Rader and Smith. (*See generally* Compl., ECF No. 1).  Defendants now seek summary judgment in the instant Motion on the basis that Plaintiff "cannot prevail on the claims included in his Complaint[.]" (*See* MSJ 14:2–3, ECF No. 53).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. <u>DISCUSSION</u>

**A. Section 1983 claims**

Plaintiff asserts two § 1983 claims: (1) a deprivation of his Fourteenth Amendment right and (2) a *Monell* claim against the LVMPD. (Compl. ¶¶ 59, 68, ECF No. 1). Specifically, Plaintiff's first cause of action alleges a deprivation of Plaintiff's Fourteenth Amendment right pursuant to Rader and Smith's alleged excessive force. (*See* Compl. ¶ 59, ECF No. 1). Plaintiff's second cause of action against LVMPD alleges that the "customs, policies, practices, and procedures, the failures to adequately train, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration or wrongful conduct by LVMPD" caused a deprivation of Plaintiff's "rights in violation of 42 U.S.C. § 1983." (*Id*. ¶ 68).

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To make out a prima facie case under § 1983, a plaintiff must show (1) defendant acted under color of law; and (2) defendant deprived the plaintiff of a constitutional right. *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted). The Court will first address the excessive force claim and then turn to the *Monell* claim.

### 1. Excessive Force Claim Against Rader and Smith

The Fourth Amendment guarantees individuals the right to be free from the excessive use of force by law enforcement officers. *Graham*, 490 U.S. at 388. The inquiry in an excessive force case is whether the officer's conduct was objectively reasonable under the circumstances. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Specifically, the reasonableness of the force used must be determined from the perspective of a reasonable law enforcement officer at the scene of the incident in question. *Graham*, 490 U.S. at 396.

The Court must balance the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. *Id*. In *Graham*, the Supreme Court indicated that relevant factors in the Fourth Amendment reasonableness inquiry include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The Court did not, however, limit the inquiry to those factors. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the reasonableness of a seizure must instead be assessed by carefully considering the objective facts and circumstances that confronted the arresting officers. *Id*. In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider. *See Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994).

The reasonableness determination in a Fourth Amendment excessive force cause of action is generally reserved to the jury. *Paiva v. City of Reno*, 939 F.Supp. 1474, 1485 (D. Nev. 1996). The Court must view the evidence in the light most favorable to Plaintiff and cannot grant summary judgment if such evidence could support a finding of excessive force. *Smith*, 394 F.3d at 701. However, on a motion for summary judgment, a court may grant the motion when, in viewing the evidence in the light most favorable to the nonmoving party, the force

used appears reasonable. *See id*. (citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). Courts do not weigh evidence on summary judgment but examine the state of the evidence to determine whether there remain genuine issues of fact, material to resolving the issue. *Id*.

Here, Defendants argue that "all three of the Graham [sic] factors are satisfied" in favor of summary judgment. (MSJ 15:24, ECF No. 53). First, Defendants claim that Smith and Rader "were investigating a serious crime, domestic battery. Domestic battery is an inherently violent offense and the Officers were right to treat Plaintiff Kiessling with caution." (*Id*. 15:25–27). Second, Defendants argue that Plaintiff posed an immediate threat due to being "warned by [Ms.] Kiessling that [Plaintiff] was violent and unpredictable and had tried to kill her in the past," and Rader and Smith were told that Plaintiff was not good with police officers. (*Id*. 15:27–28, 16:1). Further, Defendants argue that Plaintiff made it clear from his actions that "he was not going to be satisfied with simple non-cooperation, but was going to actively resist the investigation." (*Id*. 16:3–5).

Plaintiff responds that "a reasonable person could find that [Plaintiff] did not resist despite the officers' continued exhibition of force." (Resp. 14:1–2, ECF No. 57). Plaintiff argues that Smith admits "that [Plaintiff] made no demonstrable attempts to escape or injure either Smith or Rader." (*Id*. 19:20–22). Moreover, Plaintiff disputes that Defendants were responding to a report of a domestic battery and disputes that Defendants were told by Ms. Kiessling that Plaintiff might be violently unpredictable. (*Id*. 17:18–27). The Court will address each of the *Graham* factors in turn.

### i. Severity of the Crime at Issue

The amount of conflicting evidence concerning the actions of both Plaintiff, Rader, and Smith immediately prior to the LVNR applied on Plaintiff preclude Defendants from obtaining summary judgment on the excessive force claim. Specifically, Defendants argue they were investigating a claim of domestic battery based on the information provided by Ms. Kiessling;

however, contrary to Defendants' claims, Ms. Kiessling stated in a deposition that she did not tell Smith or Rader that Plaintiff hit her. (*See* Kaytlan Kiessling Interview Tr. 14:23–25, Ex. C to MSJ, ECF No. 53-3); (*see also* Kaytlan Kiessling Dep. at 12, Ex. B to MSJ, ECF No. 53-2). This testimony disputes that Rader and Smith were operating under the information that Plaintiff had harmed Ms. Kiessling. Because there is a stark discrepancy among the varying accounts, the Court finds that the severity of the crime at issue is unclear.

### ii. Threat to Officer Safety

The evidence presented further disputes the immediate threat to the safety of the officers or others. *See Graham*, 490 U.S. at 396. Contrary to Defendants' representations stating that they were confronted with a warning by "[Ms.] Kiessling that [Plaintiff] was violent and unpredictable," Ms. Kiessling's deposition reveals that she did not tell the officers that Plaintiff was violent. (MSJ 15:27–28). Ms. Kiessling testified that she told Rader and Smith "just be careful . . . [Plaintiff is] not good with police officers, he doesn't respect police officers, he doesn't like police officers." (*See* Kaytlan Kiessling Dep. at 20, Ex. B to MSJ, ECF No. 53-2). Additionally, Defendants claim that Plaintiff "jerked" his arm away from Rader in an attempt to escape and "take up a position of physical advantage." (*See* Reggie Rader Dep. at 12, Ex. E to MSJ, ECF No. 53-5). However, Plaintiff and Ray state that Plaintiff did not jerk his arm away. (*See* Plaintiff Dep. at 20, Ex. A to MSJ, ECF No. 53-1); (*see also* Bryce Ray Interview Tr. at 17, Ex. K to MSJ, ECF No. 53-13). Indeed, Smith admitted that Plaintiff did not attempt to injure him or Rader. (*See* Bobby Smith Dep. at 29–30, Ex. D to MSJ, ECF No. 53-4) (stating that Plaintiff's actions were passive "up and to the point where [they] hit the ground").

### iii. Active Resistance

Additionally, the parties dispute whether or not Plaintiff actively resisted the officers. Although Defendants claim that Plaintiff was resisting their physical restraints and commands, Ray's testimony indicates otherwise. (*See* Bryce Ray Interview Tr. at 17, Ex. K to MSJ, ECF

No. 53-13) (answering "no" when asked if Plaintiff's body stiffened up at all or if it looked like Plaintiff was going to fight the officer).

Given the various stories governing several material facts, such as the crime at issue, Ms. Kiessling's comments about Plaintiff's distaste for police officers, Plaintiff's cooperation, and Plaintiff's physical resistance, reasonable jurors construing the various testimony could return a verdict for either party. *See Ramirez v. City of Reno*, 925 F. Supp. 681, 687–88 (D. Nev. 1996) ("[B]ecause the facts regarding (a) Plaintiff's behavior and demeanor and (b) the actual force employed by the police officers in restraining him remain in dispute, those factual disputes must be resolved by the trier of fact, rather than on summary judgment."). Moreover, the Ninth Circuit has held that because the excessive force analysis usually "requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment . . . in excessive force cases should be granted sparingly . . . because such cases almost always turn on a jury's credibility determination." *Id*. Viewing this evidence in a light most favorable to Plaintiff, the Court finds that genuine issues of material fact exist as to whether Rader and Smith were justified in their use of force.

Having determined that Plaintiff alleged a Fourth Amendment violation, the Court will next consider whether the officers are nonetheless entitled to qualified immunity. Under this defense, even when an officer's actions may have violated a person's constitutional rights, qualified immunity shields public officers from liability if the unconstitutional acts did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). That is, at the time the officers used a LVNR on Plaintiff to take him to the ground, whether the Fourth Amendment violation was "'sufficiently clear' that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "It is well settled, and should be second

nature to police officers, that a citizen's Fourth Amendment right against the use of excessive force upon [him] is violated where the force used is unreasonable, when viewed in the totality of the circumstances." *Paiva*, 939 F. Supp. at 1487.

In cases like the one presented here, "because both the qualified immunity defense and the underlying excessive force claim require evaluation, from an objective standpoint, of the 'reasonableness' of the degree of force used upon the plaintiff, the two lines of inquiry converge." *Id*. Despite this convergence, however, the two analyses are not identical, and a seizure that may be unreasonable under the Fourth Amendment is not automatically unreasonable under a qualified immunity defense if the defendant could nonetheless have reasonably believed that the force employed was constitutional. *Id*. at 1487–88; *see also Hammer v. Gross*, 932 F.2d 842, 850 (9th Cir. 1991) (recognizing the distinction between Fourth Amendment unreasonableness and qualified immunity unreasonableness).

Here, after viewing the entire record in the light most favorable to Plaintiff and permitting Plaintiff the benefit of all reasonable inferences to be drawn from that record, this Court cannot find as a matter of law that Rader and Smith reasonably believed that forcing Plaintiff to the ground and applying the LVNR was constitutionally permitted. *See Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."). According to the evidence most favorable to Plaintiff, Plaintiff did not refuse reasonable and lawful requests from both Smith and Rader, Ms. Kiessling did not warn Smith and Rader that Plaintiff was violently unpredictable, Plaintiff did not resist the Officers' attempts to handcuff him, and Plaintiff did not attempt to injure Rader or Smith. (*See* Plaintiff's Dep. at 18–21, Ex. A to MSJ, ECF No. 53-1); (*see also* Kaytlan Kiessling Dep. at 20, Ex. B to MSJ, ECF No. 53-2); (*see also* Bryce Ray Interview Tr. at 15–17, Ex. K to MSJ, ECF No. 53-13).

Under these facts, the force used against Plaintiff was excessive, and Smith and Rader could not have reasonably believed otherwise. *See Newport v. City of Sparks*, No. 3-12-cv-00621-MMD-WGC, 2016 WL 1248723, at *8 (D. Nev. Mar. 28, 2016) ("Courts have delineated the contours of the law governing the use of force necessary to effectuate an arrest—that is, a police officer cannot use unnecessary, let alone, intermediate and lethal force, on a suspect who has been restrained and no longer presenting an imminent danger to the officer's or others' safety."); *see also Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 541 (6th Cir. 2015) ("Chokeholds are objectively unreasonable where an individual is already restrained or there is no danger to others."). Accordingly, at this time, Rader and Smith are not entitled to qualified immunity on the excessive force claim, and Defendants are denied summary judgment on Plaintiff's first cause of action.

### 2. *Monell* Claim Against LVMPD

Plaintiff's second cause of action seeks to impose municipal liability on LVMPD under § 1983. (Compl. ¶¶ 64–70, ECF No. 1). The Supreme Court has held that a municipality can be liable under § 1983 if an official policy or custom directly caused the violation of an individual's constitutional rights. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, (1989) (citations and internal quotations omitted). However, a municipality cannot be held liable just because it employs an officer who commits a constitutional tort. *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) (citation omitted). The discretionary actions of municipal employees, even when unconstitutional, generally are not chargeable to the municipality under § 1983. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Indeed, a single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom. *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citations omitted).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method for carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A claim under § 1983 "grounded in a government entity's failure to provide its subordinates with adequate training requires the plaintiff to demonstrate some affirmative link between the constitutional deprivation and the adoption by the policymaking entity of a plan or policy, either express or implied, authorizing or approving of such misconduct." *Paiva*, 939 F. Supp. at 1492. (internal quotation and citation omitted). "[E]vidence of inaction—specifically, failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011).

Here, Defendants argue that "Plaintiff cannot recover under this theory without proof that some extant policy, custom or practice caused a constitutional violation and he has presented no such evidence against Defendants." (MSJ 22:24–26). Additionally, Defendants

argue that Plaintiff is not able to establish a claim of "inadequate training or supervisory liability" because Plaintiff cannot make a showing of program wide inadequacy. (*Id*. 24:3–8).

Plaintiff explains that he "cannot be expected to substantively respond to a summary judgment motion without all of the discovery that has been ordered to be produced." (Resp. 2:11–13). On February 17, 2017, after Plaintiff filed a Motion to Compel Discovery, Magistrate Judge Koppe ordered Defendants to produce internal affairs documents regarding other instances of excessive force, and on March 24, 2017, she ordered Defendants to produce pages from Smith's personnel file. (*See* Orders, ECF Nos. 33, 38). Because Defendants had pending Objections to the Court's Orders to produce discovery at the time they filed the instant Motion, Plaintiff "is still awaiting the production of pages from Smith's personnel file and internal affairs documents regarding other instances of excessive force ordered by Magistrate Judge Koppe". (Resp. 22:25–27); (*see* Objections, ECF Nos. 36, 43, 46).

Judge Koppe determined that the outstanding discovery is relevant to whether LVMPD employees were acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker. (*See* Order 4:24, ECF No. 33). Therefore, this evidence most likely includes essential facts to justify Plaintiff's opposition to the Motion for Summary Judgment on this claim. Due to Defendants' failure to produce discovery and the determined relevance of the outstanding discovery, the Court is compelled to find that there is a genuine issue of material fact in regard to Plaintiff's second cause of action. *See Garrett v. City & Cty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987) ("It was error for the trial court to have granted defendants' motion for summary judgment without first having determined the merits of plaintiff's pending discovery motion."). Accordingly, the Court denies Defendants' request for summary judgment on Plaintiff's *Monell* claim against LVMPD.

## B. State Law Claims

Plaintiff's third, fourth, and fifth causes of action allege state law claims against all Defendants for negligence and battery. (Compl. ¶¶ 71–98). The Court will first address negligence and then turn to battery.

### 1. Negligence Claims Against Rader, Smith, and LVMPD

Nevada's general waiver of sovereign immunity contains exceptions, and one of those exceptions is that no negligence action may be brought against an officer or employee of Nevada "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." NRS § 41.032(2). Nevada looks to federal law regarding the Federal Tort Claims Act (the "FTCA") when analyzing claims of discretionary-act immunity and has adopted the *Berkovitz–Gaubert* test for determining whether a decision falls within the scope of that immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 727–29 (Nev. 2007); *see also Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066 n.50 (Nev. 2007) ("The discretionary-act immunity provision contained in NRS 41.032(2) is 'virtually identical' to the discretionary-act immunity provision found in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (2000).").

Under that test, in order to qualify for discretionary-act immunity, "a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez*, 168 P.3d at 729. The Supreme Court of Nevada further clarified that "decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id*. The focus of this test is not an officer's "subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id*. at 728 (quotations omitted).

The Court finds that Plaintiff's third claim for negligent use of force against Rader and Smith is not barred by NRS § 41.032(2). "An officer's decision as to how to accomplish a particular seizure or search is generally considered a discretionary determination under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007); *see also Seiffert v. City of Reno*, 2014 WL 605863, at *1 (Nev. Feb. 13, 2014) ("A police officer's discretionary decisions concerning the scope and manner of conducting an investigation are immune under NRS 41.032, so long as they are based on police policy and do not violate a mandatory directive.").

However, one limitation to the application of discretionary-act immunity is that the alleged action cannot violate the Constitution or some other legal mandate. *See Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011) (finding that the decision to detain an individual pending the outcome of immigration proceedings fell within the FTCA's discretionary function exception, which mirrors Nevada's discretionary-act immunity test, because the plaintiffs failed to "allege that this decision itself violated the Constitution"); *see also Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir.2000) (stating that in applying the FTCA's discretionary function exception that "in general, governmental conduct cannot be discretionary if it violates a legal mandate"); *see also Seiffert*, 2014 WL 605863 at *1 ("A police officer's discretionary decisions concerning the scope and manner of conducting an investigation are immune under NRS 41.032, so long as they are based on police policy and do not violate a mandatory directive.").

Here, there is at least a genuine issue of material fact concerning whether Rader and Smith's conduct violated the Fourth Amendment. *See supra* Part III. A. 1. Therefore, discretionary act immunity does not apply to bar Plaintiff's claim of negligence against Rader and Smith. *See Koiro v. Las Vegas Metro. Police Dep't*, 69 F.Supp.3d 1061, 1074–75 (D. Nev.

2014) (denying discretionary-act immunity for an officer's use of force because Plaintiff "alleged that [the officer's] use of force violated his constitutional rights"); *see also Jarvis v. City of Mesquite Police Dep't*, 2012 WL 600804, at *5 (D. Nev. Feb. 23, 2012) (applying discretionary-act immunity to the plaintiff's negligent supervision claim because "[a]lthough Plaintiff argues City acted in bad faith and violated Plaintiff's constitutional rights, Plaintiff presents no evidence raising a genuine issue of material fact that it did so"). Accordingly, Rader and Smith are not entitled to summary judgment on Plaintiff's negligence claim.

Additionally, the Court finds that Plaintiff's claim against LVMPD for negligent retention, training, and supervision, is barred by NRS § 41.032(2). Decisions on whether to hire and how to properly train and supervise an officer involve individual judgment on the part of the policymakers or supervisors and are based on considerations of social, economic, or political policy. *See Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citing *Gager v. United States*, 149 F.3d 918, 920–22 (9th Cir. 1998) ("[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.")); *see also Gonzales v. Las Vegas Metro. Police Dep't*, 2015 WL 4424552, at *6 (D. Nev. July 20, 2015) ("While police departments must routinely hire new officers, selecting which officers to hire or not hire involves an element of judgment or choice. Therefore, LVMPD's decision to hire one officer over another is a discretionary function.") (citation omitted); *see also Univ. of Nevada Sch. of Med. v. Eighth Judicial Dist. Court of State ex rel. Cnty. of Clark*, 2012 WL 5288007, at *1 (Nev. Oct. 23, 2012) (citing *Martinez*, 168 P.3d at 730) ("Dr. Zamboni's supervision of employees, including Dr. Shah, is a discretionary function entitled to immunity").

Here, plaintiff is claiming negligent retention, training, and supervision by LVMPD. As these functions are usually considered discretionary functions, and there is no reason to depart from such an interpretation in this case, Plaintiff's fourth claim for relief is barred by NRS

§ 41.032(2). Accordingly, LVMPD is entitled to summary judgment on Plaintiff's negligence claims against them, but Plaintiff's negligence claim against Rader and Smith survives.

### 2. Battery Against Rader and Smith

Plaintiff's fifth and final cause of action is battery against Rader and Smith. (Compl. ¶¶ 93–98). "To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts, §§ 13, 18). The standard for common-law battery by a police officer mirrors the federal civil rights law standard: "[l]iability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances." *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (9th Cir. 1996). "Police officers are privileged to use that amount of force which reasonably appears necessary, and are liable for battery to the extent they use more force than is reasonably necessary." *Id*.

As explained in the analysis of Plaintiff's § 1983 excessive force claim, there remain genuine issues of material fact as to the reasonableness of Rader and Smith's actions and whether Rader and Smith used an objectively reasonable amount of force. *See supra* Part III. A. 1. Accordingly, the Court finds summary judgment is improper as to Plaintiff's fifth cause of action.

### C. Punitive Damages

In his Complaint, Plaintiff seeks punitive damages. (*See* Compl. 13:11–13). However, as discussed *supra*, triable issues of fact remain on claims that theoretically could support a punitive damages prayer for relief. As such, the Court denies Defendants' Motion for Summary Judgment as to the punitive damages prayer for relief.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 53), is **GRANTED in part and DENIED in part**. Summary judgment is entered in favor of LVMPD on Plaintiff's fourth cause of action: negligent training, supervision and retention. Plaintiff's other causes of action survive.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order in compliance with Local Rule 16-4 within thirty (30) days from the date of this Order.

The clerk of Court shall enter judgment accordingly.

**DATED** this 26 day of March, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge